MARY ANNE DAVIES (Bar No. 14965)
ROSE LINDSAY-GUIMARÃES (Bar No. 11003)
JEFFERY A. SIMCOX (Bar No. 13359)
**DISABILITY LAW CENTER**
205 North 400 West
Salt Lake City, Utah 84103
(t) 801.363.1347
(f) 801.363.1437
Email:  mdavies@disabilitylawcenter.org
           rguimaraes@disabilitylawcenter.org
           jsimcox@disabilitylawcenter.org

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **ANACLETO ESCUDERO,**<br><br>    Plaintiff,<br><br>vs.<br><br>**THE COOK & BOARDMAN GROUP, LLC d/b/a ARCHITECTURAL BUILDING SUPPLY,**<br><br>    Defendant. | **COMPLAINT<br>(JURY DEMANDED)**<br><br>Civil No. _____<br><br>Judge: _____ |

Plaintiff Anacleto Escudero ("Mr. Escudero or "Plaintiff"), by and through his attorneys, hereby complains against The Cook & Boardman Group, LLC d/b/a Architectural Building Supply ("Defendant") as follows:

## I.  NATURE OF THE CLAIMS

1. This suit is brought by Plaintiff under the Americans with Disabilities Amendments Act, codified at 42 U.S.C. § 12101 *et seq*. ("ADA-AA"), for discrimination.

2. Plaintiff is a 67-year old, male, who obtained a left scaphoid fracture and impacted left intra-articular distal radius fracture in or around May of 2017. As a result of these medical conditions, Plaintiff was at all times relevant to the Complaint substantially limited in his abilities to write, care for himself, lift, push, pull and perform other major life activities.

3. Plaintiff seeks reinstatement to his position as a Warehouse Associate, economic, compensatory, and punitive damages, along with interest and attorneys' fees and costs.

## II.  PARTIES

4. Defendant is a privately owned architectural services and specialty distributor-subcontractor. Defendant is a Limited Liability Company with its principal place of business in North Carolina and registered to conduct business in the State of Utah. Defendant operates as Architectural Building Supply, a Division of the Cook and Boardman Group, LLC, and has a location in Salt Lake City, Utah.

5. Mr. Escudero is an individual residing in Salt Lake County, State of Utah. At all times relevant to the Complaint, Mr. Escudero was employed by Defendant as a Warehouse Associate in Salt Lake City, Utah.

## III.  JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

7. Venue is proper with this Court pursuant to 28 U.S.C. § 1391(b), because all the employment practices alleged to be unlawful were committed within the jurisdiction of this Court.

8. On or about April 6, 2017, Mr. Escudero timely filed a Charge of Discrimination with the Utah Antidiscrimination and Labor Division ("UALD"), alleging discrimination on the basis of disability.

9. On or about October 29, 2018, Mr. Escudero received a Notice of Right to Sue issued by the Equal Employment Opportunity Commission ("EEOC").

10. On or about October 30, 2018, Ms. Escudero received a second Notice of Right to Sue issued by the Equal Employment Opportunity Commission ("EEOC").

### IV.   GENERAL ALLEGATIONS

11. Defendant hired Mr. Escudero on approximately October 28, 2014 as a Warehouse Associate in its Salt Lake City, UT location.

12. Mr. Escudero's primary duties as a Warehouse Associate consisted of maintaining organization of materials in the warehouse, assisting in preparation for inventory counts, and evaluating returned materials. These duties required Mr. Escudero to enter product into Defendant's inventory system and then lift and distribute the materials in the warehouse.

13. On information and belief, Defendant's location in Salt Lake City, UT consisted of two separate warehouses: a "light warehouse" and a "heavy warehouse." In the light

warehouse smaller items are kept and retrieved. Packages in the light warehouse weigh approximately 40 lbs and under.  In the heavy warehouse larger items are kept and retrieved.

14. On information and belief, Mr. Escudero worked as a Warehouse Associate in Defendant's light warehouse at all times relevant to this Complaint.

15. The majority of items Mr. Escudero lifted weighed 20 lbs and under.

16. On information and belief, Defendant's light warehouse contained at least one posted sign during Mr. Escudero's employment that reminded employees to request assistance when lifting any item weighing more than approximately 30 lbs.

17. Approximately half of Mr. Escudero's work each day consisted of performing clerical work and data entry.

18. On or around May 29, 2017, Mr. Escudero injured himself at home, resulting in a left scaphoid fracture and impacted left intra-articular distal radius fracture.

19. Mr. Escudero's dominant arm is his left arm.

20. Mr. Escudero's May 29, 2017 diagnosis substantially limited him in several major life activities, including but not limited to his ability to care for himself, lifting, pushing, pulling, and writing.

21. On or about May 29, 2017,Mr. Escudero made Defendant aware of his diagnosis and his inability to work at that time.

22. On or about May 29, 2017, Mr. Escudero applied with Defendant for leave under the Family and Medical Leave Act ("FMLA").

23. On or about June 2, 2017, Defendant granted Mr. Escudero leave under the FMLA, applying Mr. Escudero's receipt of leave retroactively to his date of injury of May 29, 2017.

24. On or about July 12, 2017, Mr. Escudero's medical provider released him to return to work at Defendant beginning on July 13, 2017 with no gripping, pulling, pushing or lifting with his left arm. However, he was cleared to write and type.

25. On or about August 16, 2017 Mr. Escudero's medical provider released him to return to work beginning on August 21, 2017 with the restriction of no lifting, pushing, or pulling in excess of 20 lbs.

26. Mr. Escudero presented his August medical release to Defendant. Mr. Escudero also discussed his working restrictions with his director supervisor, Troy Larson and requested to return to work with reasonable accommodations of not lifting, pushing, or pulling more than 20 lbs.

27. On information and belief, as Mr. Escudero's direct supervisor Mr. Larson had intimate knowledge of the daily tasks required of Mr. Escudero in his position as a Warehouse Associate.

28. Mr. Larson informed Mr. Escudero that Defendant would be able to accommodate Mr. Escudero with a 20 lb. lifting restriction.

29. Mr. Larson's supervisor and general manager, BJ Jensen, later stated, however, that Mr. Escudero's note from his medical provider would need to be submitted for review to Defendant's human resources ("HR") department.

30. Mr. Jensen explained to Mr. Larson and Mr. Escudero that any modifications to work duty needed to be approved by HR before Mr. Escudero could return to work.

31. Mr. Jensen forwarded Mr. Escudero's medical restrictions note to HR.

32. On information and belief, Defendant assigned Ms. Nancy Ashbury, a representative in Defendant's HR department located in North Carolina, to evaluate and respond to Mr. Escudero's lifting restrictions.

33. At that time, neither Ms. Ashbury nor any other HR representatives communicated with Mr. Escudero regarding the medical restrictions contained in Mr. Escudero's August 16, 2017 note from his medical provider. Nor did Defendant provide Mr. Escudero with ADA paperwork

34. Without any other communication, Defendant informed Mr. Escudero that his employment was terminated via letter on approximately September 11, 2017.

35. In the September 11, 2017 termination letter, Defendant stated that Mr. Escudero had exhausted his FMLA leave on August 22, 2017.

36. In the September 11, 2017 termination letter, Defendant acknowledged that Mr. Escudero had kept it aware of updates from his physician releasing him to work with restrictions.

However, Mr. Escudero had to be terminated from his employment because he had not yet received a "full release".

37. At no time between August 22, 2017 and September 11, 2017 did Defendant inform Mr. Escudero that he had exhausted his FMLA leave, that his job was in jeopardy, or that he had the ability to request additional reasonable accommodations under the ADA.

38. At no time between August 22, 2017 and September 11, 2017 did Ms. Ashbury, or any other HR representative, discuss with Mr. Escudero how his requested accommodations would allow him to perform the essential functions of his job or possible alternatives.

39. At no time between August 22, 2017 and September 11, 2017 did Defendant discuss the option of a lateral transfer with Mr. Escudero.

40. At no time between August 22, 2017 and September 11, 2017 did Defendant inquire from Mr. Escudero when his next medical appointment was or if he had an estimate of when he might be able to return to work without restrictions.

41. At the time Defendant terminated Mr. Escudero's employment, he was making approximately $13.50 per hour.

42. At the time Defendant terminated Mr. Escudero's employment he was eligible for and received employment benefits, including but not limited to disability insurance and retirement.

43. Mr. Escudero regularly worked approximately 40 hours per week before he utilized FMLA leave and prior to Defendant terminating his employment.

44. On or about November 7, 2017, Mr. Escudero's medical provider released him to return to work with no restrictions.

**FIRST CLAIM FOR RELIEF**
**(Failure to Provide Reasonable Accommodations in Violation of the ADA-AA)**

45. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

46. At all times relevant hereto, Plaintiff was disabled within the meaning of the ADA-AA, as his left scaphoid fracture and impacted left intra-articular distal radius fracture substantially limited him in his abilities to write, care for himself, lift, push, pull and perform other major life activities.

47. At all times relevant hereto, Plaintiff was a qualified individual with a disability, who was able to perform the essential functions of his position with reasonable accommodations.

48. Defendant was made aware of Plaintiff's disability on or around May 29, 2017.

49. Even though Defendant was aware of Plaintiff's disability and his need for reasonable accommodations, Defendant refused to accommodate Plaintiff's disability by failing to participate in the interactive process and denying his reasonable accommodation requests that would have enabled his to perform the essential functions of his job duties.

50. Such reasonable accommodations may have included, but are not limited to, modified duties, additional leave beyond the leave provided by the FMLA, and/or job reassignment.

Page **8** of **11**

51. Additionally, as set forth above, Defendant's refusal to accommodate Plaintiff's disability led to Plaintiff's termination.

52. As a result of these violations, Plaintiff is entitled to reinstatement to his position as a Warehouse Associate and to recover damages for lost wages and benefits, plus prejudgment interest on those amounts. Plaintiff is also entitled to compensatory and emotional distress damages in an amount to be proven at trial.

53. Defendant's actions were taken with malice or reckless indifference to Plaintiff's federally protected rights, and therefore, he is entitled to punitive damages in an amount to be proven at trial.

54. Plaintiff is also entitled to recover attorneys' fees and costs incurred in bringing this action.

## SECOND CLAIM FOR RELIEF
### (Disability Discrimination in Violation of the ADA-AA)

55. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

56. Plaintiff is an individual with a disability.

57. Defendant treated Plaintiff differently, took adverse action against him, and ultimately terminated his employment because he suffered from disabilities. Namely, because of Plaintiff's disabilities, Defendant would not allow Plaintiff to engage in any of the work he was capable of performing, including but not limited to sorting and organizing smaller parts, clerical

work, and/or data entry, ultimately terminating Plaintiff's employment when he could not provide a release without any medical restrictions.

58. As a result of these violations, Plaintiff is entitled to reinstatement to his position as a Warehouse Associate and to recover damages for lost wages and benefits, and prejudgment interest on those amounts. Plaintiff is also entitled to compensatory and emotional distress damages in an amount to be proven at trial.

59. Defendant's actions were taken with malice or reckless indifference to Plaintiff's federally protected rights, and therefore, he is entitled to punitive damages in an amount to be proven at trial.

60. Plaintiff is also entitled to recover attorneys' fees and costs incurred in bringing this action.

## REQUEST FOR JURY TRIAL

Plaintiff requests that this matter be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant,

a. For plaintiff to be reinstatement in his position as a Warehouse Associate with Defendant

b. For Plaintiff's lost wages, compensation, and benefits;

c. For general damages including emotional distress;

d.     For Plaintiff's reasonable attorneys' fees, including expert witness fees as provided for by 42 U.S.C. § 200e-5.

e.     For pre-judgment and post-judgment interest at the highest lawful rate;

f.     For costs of court and such other relief as the court deems just and equitable.

DATED this **24TH** day of **January, 2019.**

                              THE DISABILITY LAW CENTER

                              /s/ Mary Anne Davies
                              MARY ANNE DAVIES
                              ROSE LINDSAY-GUIMARÃES
                              JEFFERY A. SIMCOX
                              *Attorneys for Plaintiff*